**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **GABRIEL ELLIOT,** | Case No. 1:23-cv-00837 |
| **Plaintiff,** | Judge: Douglas R. Cole |
| v. | **COMPLAINT AND JURY DEMAND** |
| **MEVA FORMWORK SYSTEMS, INC.,** | |
| <u>Serve Registered Agent</u>:<br>Mark R. Reid<br>2000 Airpark Drive<br>Springfield, Ohio 45502 | |
| **Defendant.** | |

**COMES NOW** Plaintiff Gabriel Elliot, by and through counsel, and for his Complaint and Jury Demand against Defendant MEVA Formwork Systems, Inc., states as follows:

## NATURE OF THIS ACTION

1. By this action, Plaintiff Gabriel Elliot, a transgender man "assigned female at birth," seeks redress under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII") against Defendant MEVA Formwork Systems, Inc., (a) for unlawful discrimination based on the protected classes of sex, gender, gender identity, and gender expression, and (b) for retaliation by terminating his employment on June 1, 2023 for opposing Defendant's unlawful conduct.  Plaintiff also proceeds under analogous State law, Ohio Revised Code §4112.01 *et seq.* for unlawful discrimination based on sex, gender, gender identity, and gender expression and for retaliation.  Plaintiff further proceeds in tort under Ohio law for violation of public policy.

2. By this action, Plaintiff seeks compensatory damages, damages for

emotional distress, statutory damages, liquidated damages, equitable relief in the form of back pay and front pay, pre-and post-judgment interest, reimbursement of his costs and attorney's fees, and all other relief to which he's entitled.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

4. Before July 2023, Plaintiff Gabriel Elliot resided in Greene County, Ohio. Since July 2023, he has been a resident of Marion County, Indiana.[1]

5. At all times relevant to this Complaint, Defendant MEVA Formwork Systems, Inc., has been a for-profit corporation organized under the laws of the State of Ohio, with its principal place of business in Clark County, Ohio.

6. This Court has personal jurisdiction over the parties to this action. This Court also has original subject matter jurisdiction over the controversy alleged in this Complaint under 28 U.S.C. §1331 based on the federal question presented.

7. This Court also has supplemental subject matter jurisdiction over Plaintiff's state-law claims under 28 U.S.C. §1367.

8. Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the facts, occurrences, transactions, and series of facts, occurrences, and transactions giving rise to this Complaint took place in this federal judicial District.

## FACTS

9. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully

---

[1] Defendant's records may refer to Plaintiff by his dead name, Ariel Kramer.

rewritten.

10. In 2020, Plaintiff earned a bachelor's degree in mass media communication from Wright State University.

11. In April 2021, Defendant hired Plaintiff as its Media Coordinator at its office in Springfield, Ohio.

12. According to its website, Defendant supplies concrete formwork products and engineering services to the construction industry in the United States, including without limitation formwork consulting, planning, design, manufacturing, assembly, maintenance, on-site services, refurbishment, sales, and rentals. "Formwork" in construction engineering involves building molds into which concrete or similar materials are either precast or cast-in-place at job sites, and either incorporated permanently into a construction project or as reinforcement to a completed structure.

13. In his capacity as Media Coordinator, Plaintiff's duties included visiting job sites to record video footage of formwork systems built by Defendant in their various stages, and editing that footage for publication and marketing on Defendant's social media sites.

14. On January 3, 2023, Plaintiff disclosed to Defendant's Human Resources Manager, Steve Newell via email, that he is a transgender man and requested that Defendant and its employees use he/him/his pronouns when referencing him. In the same email, Plaintiff included a link to educational resources and expressed only hopefulness and positivity about his future with the company.

15. Before January 3, 2023, Plaintiff presented to his employer and coworkers

3

as a woman using she/her/hers pronouns.

16. Copied on Plaintiff's January 3, 2023 email was Robert Herndon, a salesperson employed by Defendant.

17. While employed by Defendant, Plaintiff regularly worked with Mr. Herndon and Defendant's customers on sales and marketing materials and proposals.

18. Before January 3, 2023, Plaintiff had a positive and professional relationship with Mr. Herndon and, indeed, all his coworkers.

19. On or about April 26, 2023, however, Mr. Herndon inadvertently sent an audio message to Defendant's then Customer Service Manager, Kelci Rhodes, in which it was clear he was speaking to an unknown person. In the audio message, Mr. Herndon referred to Plaintiff as "it" and as a "marketing girl."

20. Ms. Rhodes listened to Mr. Herndon's audio message and reported the same to Plaintiff out of concern for his safety.

21. Because Plaintiff didn't know who Mr. Herndon was speaking to in the audio message, and because of his regular working relationship with Mr. Herndon and Defendant's customers on job sites, Plaintiff also became concerned for his physical safety and employment with the company.

22. Thus, Plaintiff reported his concerns to Mr. Newell, later that day. In keeping with Defendant's policies, procedures, and Employee Handbook, Plaintiff asked Mr. Newell to investigate, to which Mr. Newell agreed.

23. At 7:48 p.m. on April 26, 2023, Mr. Herndon emailed Plaintiff in response to a routine request for information about one of Defendant's customers. Such

information was routinely exchanged between Mr. Herndon and Plaintiff within the scope of their respective duties. In this email, however, Mr. Herndon refused to communicate the requested information to Plaintiff without giving a reason and in contravention of Defendant's policies, procedures, and regular practices.

24. Despite Plaintiff's communications with Mr. Newell requesting an investigation, Mr. Herndon was not placed on administrative leave. Rather, Mr. Herndon continued to interact with Plaintiff until Mr. Herndon met with Human Resources on or about May 1, 2023.

25. On or about May 2, 2023, Plaintiff initiated a Charge of Discrimination with the OCRC, Charge No. DAY76(31521)(05022023)("Charge").

26. Thereafter, Plaintiff diligently preserved documents, communications, and other material he believed could be relevant to his concerns and Defendant's investigation, and in keeping with his obligation to cooperate the same. Plaintiff periodically communicated this information to Mr. Newell.

27. During that timeframe, Plaintiff also discussed his concerns with co-workers.

28. Plaintiff met with Defendant's Human Resources Department on May 4, 2023 and again on May 8, 2023. At the May 8, 2023, conference, Defendant agreed to fully investigate Plaintiff's concerns.

29. On or about May 10, 2023, Plaintiff reported the April 26, 2023, incident to Defendant's Head of Human Resources, Philipp Vater.

30. On or about May 16, 2023, Plaintiff received a letter from Mr. Vater stating

that Defendant had completed its investigation and concluded that nothing improper occurred but also assuring Plaintiff that:

> MEVA takes all complaints of discrimination, harassment, and/or retaliation seriously. Accordingly, we promptly reviewed your complaint of May 10. After reviewing the steps taken by MEVA USA in their thorough investigation and speaking with those persons who previously investigated the matter, we can validate that appropriate action has been taken.
>
> Again, MEVA does not tolerate discrimination, harassment, or retaliation of any kind. As such, please immediately report any instances of such misconduct to HR so that it can be promptly addressed.

31. Thereafter, Plaintiff heard nothing more from Defendant about his concerns or Defendant's supposed investigation into the same.

32. Instead, on June 1, 2023, Defendant retaliated against Plaintiff by terminating his employment under the pretextual guises of "misusing company devices" and "disloyalty." In reality, Plaintiff used Defendant's electronic devices to maintain an accurate digital record of the facts, documents, communications, and persons with knowledge of the same (a) to assist with Defendant's investigation and (b) to prevent retaliation. Plaintiff did so because like every modern enterprise, Defendant largely maintains its records electronically.

33. Thereafter, Plaintiff learned that Defendant had also terminated Ms. Rhodes on similar grounds.

34. Upon information and belief, Mr. Herndon is still employed by Defendant. It is unknown whether Defendant took any disciplinary action against him related to the April 26, 2023 incident.

35. On September 14, 2023, the OCRC issued Plaintiff a Notice of Right to Sue.

6

## CAUSES OF ACTION

### Count I
### Violation of 42 U.S.C. §2000e, *et seq.*:
### Discrimination Based on
### Sex, Gender, Gender Identity, and Gender Expression

36. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

37. At all times relevant to this Complaint, Defendant has been an "employer" within the meaning of Title VII.

38. At all times relevant to this Complaint, Plaintiff was an "employee" "employed" by Defendant within the meaning of Title VII.

39. Section 2000e-2(a)(1) of Title VII makes it unlawful for Defendant to fail or refuse to hire, discharge, or otherwise discriminate against Plaintiff with respect to his compensation, terms, conditions, or privileges of employment, because of his sex, gender, gender identity, and gender expression.

40. Title VII also prohibits Defendant from evaluating Plaintiff's employment by assuming or insisting that he conforms to stereotypes associated with any sex or gender.

41. Thus, sex and gender-based discrimination is presumptively invalid under Title VII.

42. As an openly transgender person, Plaintiff is a member of the class(es) of persons protected under Title VII by being (a) commonly understood to be of the female sex and (b) a transgender person.

43. At all times relevant to this Complaint, Defendant knew that Plaintiff is a

member of the classes of protected persons described in this Complaint and under Title VII.

44. At all times relevant to this Complaint, Plaintiff was objectively qualified for his position of employment with Defendant, and all of the benefits associated with the same.

45. As described in this Complaint, Defendant took several adverse employment actions against Plaintiff in violation of Title VII, including without limitation (a) failing to investigate his complaints of discrimination because he is a transgender; (b) retaliating against him for filing a Charge of Discrimination with the OCRC; and (c) ultimately terminating his employment based on his sex, gender, gender identity, and gender expression.

46. Defendant has either eliminated Plaintiff's former position of employment, deliberately failed to refill that position, replaced him with a person outside of his protected class(es), and/or treated Plaintiff differently than similarly situated non-protected employees.

47. Defendant's illegal conduct described in this Complaint was intentional and deliberate within the meaning of Title VII.

48. Defendant's stated reasons for retaliating against, and firing Plaintiff are false, have no basis in fact, didn't actually motivate its actions, and/or were insufficient to motivate its actions, and are therefore pretext for illegal discrimination under Title VII for which there was no legitimate, lawful, nondiscriminatory purpose.

49. As a direct and proximate result of Defendant's violations of Title VII as

described in this Complaint, Plaintiff has suffered damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

### Count II
### Violation of 42 U.S.C. §2000e, *et seq.*:
### Retaliation

50. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

51. Without limitation, by objecting to Defendant's discriminatory conduct described in this Complaint, requesting that Defendant investigate the same, and initiating a Charge of Discrimination with the OCRC, Plaintiff engaged in activity protected by Title VII.

52. At all times relevant to this Complaint, Defendant knew Plaintiff engaged in the activity protected by Title VII described in this Complaint.

53. Upon learning that Plaintiff had availed himself of his rights under Title VII in the manner described in this Complaint, Defendant retaliated against Plaintiff by firing him.

54. As a direct and proximate result of Defendant's unlawful retaliation against Plaintiff described in this Complaint, Plaintiff has suffered damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

### Count III
### Violation of Ohio Revised Code §4112.01, *et seq.*:
### Discrimination Based on Sex, Gender, Gender Identity, and Gender Expression; and Retaliation

55. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

56. Under Ohio Revised Code §4112.02(A), it's unlawful for Defendant to discriminate against Plaintiff because of his sex, gender, gender identity, and gender expression for the same reasons and under the same legal standard articulated in Title VII.

57. Under Section 4112.02(I), it's similarly unlawful for Defendant to retaliate against Plaintiff for opposing any unlawful discriminatory practice, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing before the OCRC, for the same reasons and under the same legal standard articulated in Title VII.

58. For the same reasons stated in Count I of this Complaint for Defendant's violations of Title VII, Defendant has violated Section 4112.02(A) by unlawfully discriminating against Plaintiff on the basis of his sex, gender, gender identity, and gender expression.

59. For the same reasons stated in Count II of this Complaint, Defendant has violated Section 4112.02(I) by retaliating against Plaintiff for engaging in protected activity.

60. As a direct and proximate result of Defendant's violations of Sections 4112.02(A) and 4112.02(I), Plaintiff has suffered damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

## Count IV
## Violation of Public Policy

61. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

10

62. Under Ohio law, public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason that is prohibited by statute, for which a tort cause of action lies to Plaintiff.

63. In Ohio, a clear public policy exists under the State and federal constitutions, Title VII and Chapter 4112 and their regulations, and/or the common law against discriminating against employees based on their sex, gender, gender identity, and gender expression.

64. Defendant's termination of Plaintiff's employment under the circumstances described in this Complaint jeopardizes and violates Ohio's public policy.

65. Defendant's termination of Plaintiff's employment as described in this Complaint was motivated by conduct related to public policy.

66. As described in this Complaint, Defendant lacks any overriding legitimate business justification for terminating Plaintiff's employment.

67. As a direct and proximate result of Defendant's violation of public policy, Plaintiff has suffered damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Gabriel Elliot, prays for judgment against Defendant MEVA Formwork Systems, Inc., as follows:

A. Compensatory damages;

B. Damages in the form of emotional distress;

C. Statutory damages;

11

D.  Liquidated damages;

E.  Equitable relief in the form of front and back pay;

F.  Pre- and post-judgment interest on all damages;

G.  An award of his out-of-pocket expenses;

H.  An award of his attorney's fees;

I.  An award of punitive damages; and

J.  All other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

***/s/ Justin Whittaker***
Justin Whittaker, Esq. (0093212)
WHITTAKER LAW, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
Tel: (513) 259-3758
Fax: (513) 436-0698
Justin@WhittakerLawFirm.com

**Counsel for Plaintiff**
**Gabriel Elliot**

12